Rob A. Justman (*Pro Hac Vice Pending*)
The Cavanagh Law Firm, PA
1850 North Central Avenue, Suite 1900
Phoenix, Arizona 85004
(602) 350-8180
rjustman@cavanaghlaw.com

Marisa A. Pocci Carney
Nevada Bar No. 10720
Litchfield Cavo, LLP
3753 Howard Hughes Parkway, Suite 200
Las Vegas, Nevada 89169
(702) 949-3100
pocci@litchfieldcavo.com
*Attorneys for the Plaintiff,*
*Mt. Hawley Insurance Company*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| Mt. Hawley Insurance Company, | Case No. |
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| Richardson Construction Inc., | |
| Defendant. | |

The Plaintiff, Mt. Hawley Insurance Company ("Mt. Hawley"), brings this Complaint for Declaratory Judgment against the policyholder, Richardson Construction Inc. ("Richardson Construction"), and alleges as follows:

## **Introduction**

1.      Mt. Hawley seeks a declaratory judgment that it has no duty to defend or indemnify Richardson Construction under the commercial general liability policies and

excess following form liability policies that it issued to Richardson Construction for a construction defect action brought by the City of North Las Vegas ("the City").

2.      Richardson Construction is a general contractor and entered into a construction contract with the City to build North Las Vegas Fire Station 53.

3.      Construction was completed in March 2009.  Over ten years later, in July 2019, the City sued Richardson Construction (and others) for construction defects.  The City alleged, "Long after construction of Fire Station 53 was completed, the City noticed distress to the building including wall cracks and separations, and interior slab cracking." This "was due to a combination of excessive differential settlement and expansive soil activity."

4.      The City's Complaint stated counts against Richardson Construction for breach of contract, breach of the covenant of good faith and fair dealing implied in the construction contract, negligence, and breach of implied warranty.

5.      The commercial general liability policies issued by Mt. Hawley to Richardson Construction include a breach of contract exclusion.  The breach of contract exclusion states coverage does not apply, nor is there a duty to defend, any "suit" for "property damage" whether "arising directly or indirectly out of the following: a. Breach of express or implied contract; b. Breach of express or implied warranty…."  (Terms in "quotations" are defined in the policies.)

6.      The City's "suit" against Richardson Construction is for "property damage" arising directly or indirectly out of the construction contract.  The alleged construction defects breach the construction contract with the City.  Richardson Construction was contractually obligated to build Fire Station 53 free from construction defects.

7.      The excess liability policies follow the form of the coverage in the underlying commercial general liability policies and equally do not provide coverage for the "suit."

8.      In addition, the commercial general liability policies (and excess following-form policies) preclude coverage for the City's "suit" by operation of other exclusions, including without limitation the earth movement exclusion and the continuous damage exclusion.

9.      Because the commercial general liability policies (and excess following-form policies) do not provide coverage for the City's "suit," Mt. Hawley has no duty to defend or indemnify Richardson Construction against the "suit."

10.     Mt. Hawley is presently defending Richardson Construction against the "suit" under a full and complete reservation of rights, including the right to bring this declaratory judgment action and withdraw from the defense.

11.     By this Complaint, Mt. Hawley commences this declaratory judgment action to establish that it does not provide coverage for the City's "suit" against Richardson Construction and that it has no duty to defend or indemnify Richardson Construction against the "suit."

12.     Mt. Hawley respectfully requests this Court enter a declaratory judgment providing that Mt. Hawley has no duty to defend or indemnify Richardson Construction against the City's lawsuit.

### **Jurisdiction of this Court**

13.     Mt. Hawley brings this action under the federal Declaratory Judgment Act, 28 U.S.C. § 2201.

14.     The Court has subject matter jurisdiction over this declaratory action under 28 U.S.C. § 1332(a)(1). Subject matter jurisdiction is founded upon diversity of citizenship.

15.     Mt. Hawley Insurance Company is an Illinois corporation with its principal place of business in Illinois.

16.     Richardson Construction is a Nevada corporation with its principal place of

business in Nevada.

17.     The citizenship of the Plaintiff – Mt. Hawley in Illinois – is diverse from the citizenship of the Defendant – Richardson Construction in Nevada.

18.     The amount in controversy exceeds $75,000 (exclusive of interest and costs).

19.     Richardson Construction tendered its defense and indemnity against the City's lawsuit to Mt. Hawley.  Mt. Hawley accepted the tender, and has been providing for the defense of Richardson Construction under a full and complete reservation of rights.

20.     Mt. Hawley is presently paying for the attorneys' fees, expert fees, and defense expenses incurred by or on behalf of Richardson Construction in the City's lawsuit, subject to this reservation of right to withdraw from the defense and deny indemnity for any settlement or judgment in the lawsuit.

21.     The City seeks over $2,200,000 in construction defect repair costs from Richardson Construction and the other defendants to the City's lawsuit. Richardson Construction seeks defense coverage and indemnity coverage from Mt. Hawley for the City's lawsuit. The amount in dispute with respect to both defense coverage and indemnity coverage is therefore over $75,000. The amount in controversy exceeds $75,000 (exclusive of interest and costs).

22.     Mt. Hawley disputes that it owes any coverage or duty to pay for the attorneys' fees, expert fees, defense expenses, and settlement or judgment incurred by or on behalf of Richardson Construction in the City's lawsuit.

23.     This controversy is ripe and justiciable.  Richardson Construction tendered its defense and indemnity against the City's "suit" to Mt. Hawley, and Mt. Hawley disputes that it owes defense or indemnity to Richardson Construction for the City's "suit."  Mt. Hawley is providing for the defense of Richardson Construction but disputes

that it owes defense coverage and indemnity coverage.

24.     The Court has personal jurisdiction over Richardson Construction, a Nevada corporation with its principal place of business in Nevada.

25.     Venue is appropriate in this District under 28 U.S.C. § 1391.  Richardson Construction is subject to personal jurisdiction within this District and a substantial part of the events or omissions giving rise to this action occurred in this District.

### The City's Suit

26.     In July 2019, the City filed its Complaint against Richardson Construction (and others) in the District Court for Clark County, Nevada, captioned *City of North Las Vegas v. Dekker/Perich/Sabatini Ltd., et al.*, Case No. A-19-798346-C ("the City's suit").

27.     A true and correct copy of the Complaint in the City's suit, including its exhibits, is attached as Exhibit A ("the Complaint").

28.     The Complaint explains that over 10 years earlier, in January 2008, the City and Richardson Construction entered into a construction contract to build the North Las Vegas Fire Station 53 ("Fire Station 53").

29.     Attached as Exhibit 3 to the Complaint is the construction contract between the City and Richardson Construction ("the Construction Contract").

30.     The face amount of the Construction Contract payable to Richardson Construction was $4,704,000.

31.     Richardson Construction was responsible for the construction of Fire Station 53 as the general contractor, and was specifically responsible for "site clearing, earthwork, masonry, structural steel roofing, interior finishes, plumbing, fire protection, heating, ventilation and air conditioning systems, electrical systems, lighting, power, telephone, data-communications, landscaping, utilities, asphalt/concrete drives, concrete sidewalk and patios, furnishing equipment, and other work…."  (Exhibit A, Complaint, at ¶ 39)

32. On February 25, 2009, the certificate of occupancy for Fire Station 53 was issued to the City.

33. On March 17, 2009, construction of Fire Station 53 was completed. In the Notice of Completion filed with the Clark County Recorder, Exhibit 4 to the Complaint, the City explained the "Contractor" Richardson Construction completed construction of Fire Station 53 on March 17, 2009.

34. Approximately eight years later, in 2017, "[l]ong after construction of Fire Station 53 was completed, the City noticed distress to the building including wall cracks and separations, and interior slab cracking." (Exhibit A, Complaint, at ¶ 46)

35. The City investigated the distress to the building and determined it "was due to a combination of excessive differential settlement and expansive soil activity." (Exhibit A, Complaint, at ¶ 49)

36. "[T]he soil underlying the site has high expansion characteristics. The distress to the building, as well as separations in the exterior flatwork, was partly related to expansive soil influences. Settlement of the building occurred as a result of stresses from the weight of the structure and self-weight of the earth materials. Settlement was aggravated by introduction of water to the subsoil…. Fire Station 53 [was] likely to be impacted by continuing settlement and expansive soil influences." (Exhibit A, Complaint, at ¶¶ 50-53)

37. The City retained a structural engineer to prepare a plan for fixing the soil problems at Fire Station 53. The plans "generally consisted of excavation, demolition, leveling, and underpinning of parts of Fire Station 53." (Exhibit A, Complaint, at ¶ 59)

38. Once this soils work was completed, "additional work will need to be done to the cosmetic condition of Fire Station 53 to repair damage from settling of the building." (Exhibit A, Complaint, at ¶ 61)

39. The first count against Richardson Construction is for breach of contract.

The Complaint states, "Richardson Construction materially breach[ed] the Construction Contract by failing to fulfill its obligations including, among other things, failing to complete its work in a good and workmanlike manner as detailed above." (Exhibit A, Complaint, at ¶ 72)

40.    The second count against Richardson Construction is for breach of the covenant of good faith and fair dealing implied in the Construction Contract.  The Complaint alleges the Construction Contract imposed on Richardson Construction a duty of good faith and fair dealing. And Richardson Construction breached this duty "by performing in a manner unfaithful to the purpose of the … Construction Contract." (Exhibit A, Complaint, at ¶ 78)

41.    The next count against Richardson Construction is for negligence.  The negligence count incorporates by reference all previous allegations of the Complaint, including without limitation the counts for breach of contract and breach of the covenant of good faith and fair dealing implied in the Construction Contract. Richardson Construction allegedly breached its duty to use reasonable care and caution in performing its work on the project.  (The Construction Contract and the implied warranty also obligate Richardson Construction to use reasonable care and caution in performing its work for the City.)

42.    The fourth and final count against Richardson Construction is for breach of implied warranty.  Richardson Construction "impliedly warranted that [its] work on the Project would be performed with care, skill, reasonable expediency, and faithfulness in a workmanlike manner." (Exhibit A, Complaint, at ¶ 88)

43.    The Complaint states Richardson Construction breached the implied warranty by failing "to perform the work on the Project with care, skill, reasonable expediency, and faithfulness, and in a workmanlike manner as would be expected for this type of work." (Exhibit A, Complaint, at ¶ 90)

**Mt. Hawley Policies**

44.     Mt. Hawley issued to Richardson Construction twelve commercial general liability policies and three commercial excess liability policies.

45.     The twelve commercial general liability policies bear the following policy numbers and policy periods: Policy No. MGL0154843 for the policy period of July 1, 2008 to July 1, 2009 ("2008 Policy"); Policy No. MGL0158923 for the policy period of July 1, 2009 to July 1, 2010 ("2009 Policy"); Policy No. MGL0170460 for the policy period of July 1, 2010 to July 1, 2011 ("2010 Policy"); Policy No. MGL0173532 for the policy period of July 1, 2011 to July 1, 2012 ("2011 Policy"); Policy No. MGL0176784 for the policy period of July 1, 2012 to July 1, 2013 ("2012 Policy"); Policy No. MGL0179806 for the policy period of July 1, 2013 to July 1, 2014 ("2013 Policy"); Policy No. MGL0180847 for the policy period of July 1, 2014 to July 1, 2015 ("2014 Policy"); Policy No. MGL0182896 for the policy period of July 1, 2015 to July 1, 2016 ("2015 Policy"); Policy No. MGL0185361 for the policy period of July 1, 2016 to July 1, 2017 ("2016 Policy"); Policy No. MGL0186245 for the policy period of July 1, 2017 to July 1, 2018 ("2017 Policy"); Policy No. MGL0188782 for the policy period of July 1, 2018 to July 1, 2019 ("2018 Policy"); and Policy No. MGL0189550 for the policy period of July 1, 2019 to July 1, 2020 ("2019 Policy").

46.     The 2008 Policy, 2009 Policy, 2010 Policy, 2011 Policy, 2012 Policy, 2013 Policy, 2014 Policy, 2015 Policy, 2016 Policy, 2017 Policy, 2018 Policy, and 2019 Policy are collectively referred to as "the CGL Policies."

47.     True and correct copies of the CGL Policies are attached as Exhibit B.

48.     The three commercial excess liability policies are numbered, for the following policy periods: Policy No. MXL0367032 for the policy period of July 1, 2008 to July 1, 2009 ("2008 Excess Policy"); Policy No. MXL0369421 for the policy period of July 1, 2009 to July 1, 2010 ("2009 Excess Policy"); and Policy No. MXL0369787 for

the policy period of July 1, 2010 to July 1, 2011 ("2010 Excess Policy").

49.     The 2008 Excess Policy, 2009 Excess Policy, and 2010 Excess Policy are collectively referred to as "the Excess Policies."

50.     True and correct copies of the Excess Policies are attached as Exhibit C.

**Defense Under Reservation of Rights**

51.     Richardson Construction tendered its defense and indemnity against the Complaint to Mt. Hawley.

52.     Mt. Hawley disputes that it owes coverage for the Complaint under the CGL Policies and the Excess Policies.

53.     Mt. Hawley is presently providing for the defense of Richardson Construction against the City's lawsuit under a full and complete reservation of rights, including the right to withdraw from the defense and bring this declaratory judgment action to establish there is no coverage for the Complaint under the CGL Policies and Excess Policies.

**The CGL Policies**

54.     Mt. Hawley incorporates by this reference the full and complete contents of the CGL Policies, found at Exhibit B, as though the same were fully quoted in this paragraph.

55.     Mt. Hawley relies upon the entire contents of the CGL Policies, as incorporated by reference in Paragraph 54 of this Complaint for Declaratory Judgment, in support of its claims for relief.

56.     Mt. Hawley is entitled to a declaratory judgment that the terms, provisions, definitions, exclusions, limitations, conditions, and endorsements of the CGL Policies preclude coverage for the Complaint.

57.     Subject to all other terms, conditions, limitations and exclusions, the CGL Policies' insuring agreement provides coverage, in relevant part, for damages the insured

becomes legally obligated to pay because of "property damage," but only if the "property damage" occurs during the CGL Policies' respective policy periods and is caused by an "occurrence." The CGL Policies define the terms "suit," "property damage," and "occurrence." The term "occurrence" means "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

58.	The CGL Policies' breach of contract exclusion, earth movement exclusion, and continuous damages exclusion preclude coverage for the Complaint.  And other policy terms, provisions, definitions, exclusions, limitations, conditions, and endorsements of the CGL Policy also preclude coverage for the Complaint.

Breach of Contract Exclusion

59.	The CGL Policies all include the breach of contract exclusion.

60.	The breach of contract exclusion provides: "This insurance does not apply, nor do we have a duty to defend any claim or 'suit' for … 'property damage' … arising directly or indirectly out of the following: a. Breach of express or implied contract; b. Breach of express or implied warranty…."

61.	To the extent the Complaint alleges "property damage" caused by an "occurrence," as the CGL Policies define those terms, the "property damage" arises directly or indirectly out of the breach of express or implied contract and breach of express or implied warranty stated in the Complaint.

62.	The Complaint states that Richardson Construction entered the Construction Contract with the City which obligated Richardson Construction to complete its work in a good and workmanlike manner.

63.	The Complaint alleges that Richardson Construction did not perform its work in a good and workmanlike manner, resulting in "property damage."

64.	The "property damage" arises directly or indirectly out of Richardson Construction's failure to perform its work in a good and workmanlike manner in breach

of the Construction Contract.

65.     The breach of contract exclusion precludes coverage for the "property damage" and the Complaint.

66.     The Complaint states the Construction Contract imposed on Richardson Construction a duty of good faith and fair dealing requiring Richardson Construction to complete its work in a manner faithful to the purpose and intent of the Construction Contract.

67.     The purpose and intent of the Construction Contract was for Richardson Construction to build Fire Station 53 free from construction defects.

68.     The Complaint alleges Richardson Construction did not build Fire Station 53 free from construction defects, resulting in "property damage."

69.     The "property damage" arises directly or indirectly out of Richardson Construction's alleged failure to build Fire Station 53 free from construction defects.

70.     The breach of contract exclusion precludes coverage for the "property damage" and the Complaint.

71.     The Complaint states Richardson Construction impliedly warranted that its work would be performed with care, skill, reasonable expediency, and faithfulness in a workmanlike manner.

72.     The Complaint alleges Richardson Construction did not perform its work with care, skill, reasonable expediency, and faithfulness in a workmanlike manner, which resulted in "property damage."

73.     The "property damage" arises directly or indirectly out of Richardson Construction's failure to perform its work with care, skill, reasonable expediency, and faithfulness in a workmanlike manner.

74.     The breach of contract exclusion therefore precludes coverage for the "property damage" and the Complaint.

75.     The CGL Policies do not provide coverage for the Complaint because the breach of contract exclusion applies and bars coverage for the "property damage" alleged in the Complaint.

Earth Movement Exclusion

76.     The 2008 Policy has the earth movement exclusion.

77.     The 2010 Policy, 2011 Policy, 2012 Policy, 2013 Policy, 2014 Policy, and 2015 Policy also have the earth movement exclusion.

78.     The earth movement exclusion provides: "This insurance does not apply to any claim for … 'property damage' … caused by, arising out of, relating to, resulting from, contributed to, or aggravated by any 'movement of land or earth.'"

79.     The exclusion defines "movement of land or earth" as including "movement in any direction, including but not limited to instability, rising, upheaval, expansion, subsidence, settling, sinking, shrinkage, slipping, falling away, titling, caving in, eroding, shifting in a horizontal or sideways direction, mud flow, mudslide or earthquake or any other movement of land or earth, regardless of the cause."

80.     To the extent the Complaint alleges "property damage" to which the insuring agreement applies, the "property damage" was caused by, arising out of, relating to, resulting from, contributed to, or aggravated by the "movement of land or earth."

81.     The earth movement exclusion applies and bars coverage under the 2008 Policy for the Complaint.

82.     The earth movement exclusion also bars coverage under the 2010 Policy, 2011 Policy, 2012 Policy, 2013 Policy, 2014 Policy, and 2015 Policy for the Complaint.

Continuous Damage Exclusion

83.     All the CGL Policies carry the continuous or progressive injury or damage exclusion ("continuous damage exclusion").

84.     The continuous damage exclusion precludes coverage for (among other

things) "property damage" because of or related to "property damage": "b. Which are, or are alleged to be, in the process of taking place prior to the inception date of this Policy, even if the actual or alleged … 'property damage' … continues during this policy period; or c. Which were caused, or are alleged to have been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of this Policy."

85.     The certificate of occupancy for Fire Station 53 was issued on February 25, 2009.  The notice of completion specified that construction was completed on Fire Station 53 on March 17, 2009.

86.     The "property damage" allegedly discovered by the City was "caused, or are alleged to have been caused, by any defect, deficiency, inadequacy or condition which first existed prior to the inception date of [the 2009 Policy]."

87.     By the time the 2009 Policy incepted on July 1, 2009, the certificate of occupancy and notice of completion for Fire Station 53 had already documented that construction had been completed on or before March 17, 2009.

88.     Any "property damage" discovered subsequent to March 17, 2009 was because of or related to "property damage" caused or alleged to have been caused by construction defects, deficiencies, inadequacies, or conditions that existed on or before March 17, 2009.

89.     "Property damage" discovered after March 17, 2009 was also actually or allegedly "in the process of taking place prior to the inception date of [the 2009 Policy], even if the actual or alleged … 'property damage' … continue[d] during [the 2009 Policy's] policy period."

90.     The continuous damage exclusion applies on two independent grounds and excludes coverage for the Complaint under all the Policies except for the 2008 Policy, which was in place at the time construction was ongoing and completed on March 17, 2009.

91.     However, the breach of contract exclusion and the earth movement exclusion (among other policy terms, definitions, provisions, exclusions, limitations, conditions, and endorsements) preclude coverage for the Complaint under the 2008 Policy.

## The Excess Policies

92.     Mt. Hawley incorporates by this reference the full and complete contents of the Excess Policies, found at Exhibit C, as though the same were fully quoted in this paragraph.

93.     Mt. Hawley relies upon the entire contents of the Excess Policies, as incorporated by reference in Paragraph 92 of this Complaint for Declaratory Judgment, in support of its claims for relief.

94.     Mt. Hawley is entitled to a declaratory judgment that the terms, provisions, definitions, exclusions, limitations, conditions, and endorsements of the Excess Policies preclude coverage for the Complaint.

95.     The insuring agreement for the Excess Policies applies only to an occurrence insured by "underlying insurance."

96.     "Underlying insurance" for each of the Excess Policies is each of the CGL Policies for the corresponding policy period of the policy period for each of the Excess Policies.

97.     The Excess Policies are subject to all of the exclusions in the CGL Policies, and follow the form of this "underlying insurance" in all respects (except where further limited or excluded by the terms of the Excess Policies).

98.     The "underlying insurance" – the CGL Policies – does not provide coverage for the Complaint.

99.     Since the "underlying insurance" does not provide coverage for the Complaint, the Excess Policies do not provide coverage for the Complaint.

## FIRST CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT ON THE DUTY TO DEFEND)

100.   Mt. Hawley realleges paragraphs 1 through 99 as though fully repeated in this claim for relief.

101.   The terms, definitions, provisions, limitations, exclusions, conditions, and endorsements of the CGL Policies and the Excess Policies preclude coverage for the Complaint.

102.   The CGL Policies and the Excess Policies do not provide coverage, including defense coverage, for the Complaint.

103.   Mt. Hawley owes no defense coverage to Richardson Construction under the CGL Policies and the Excess Policies for the Complaint.

104.   Mt. Hawley has no duty to defend Richardson Construction against the Complaint.

105.   Mt. Hawley is entitled to a declaratory judgment that it has no duty to defend Richardson Construction against the Complaint.

106.   Mt. Hawley is entitled to a declaratory judgment that the CGL Policies do not provide coverage, including defense coverage, for the Complaint.

107.   Mt. Hawley is entitled to a declaratory judgment that the Excess Policies do not provide coverage, including defense coverage, for the Complaint.

## SECOND CLAIM FOR RELIEF

### (DECLARATORY JUDGMENT ON THE DUTY TO INDEMNIFY)

108.   Mt. Hawley realleges paragraphs 1 through 107 as though fully repeated in this claim for relief.

109.   The terms, definitions, provisions, limitations, exclusions, conditions, and endorsements of the CGL Policies and the Excess Policies preclude coverage for the Complaint.

110. The CGL Policies and the Excess Policies do not provide coverage, including indemnity coverage, for the Complaint.

111. Mt. Hawley owes no indemnity coverage to Richardson Construction under the CGL Policies and the Excess Policies for the Complaint.

112. Mt. Hawley has no duty to indemnify Richardson Construction against any settlement or judgment on the Complaint.

113. Mt. Hawley is entitled to a declaratory judgment that it has no duty to indemnify Richardson Construction against any settlement or judgment on the Complaint.

114. Mt. Hawley is entitled to a declaratory judgment that the CGL Policies and the Excess Policies do not provide coverage, including indemnity coverage, for the Complaint.

## **PRAYER FOR RELIEF**

WHEREFORE, Mt. Hawley prays for the Court to enter a judgment declaring:

A.     The CGL Policies issued by Mt. Hawley to Richardson Construction do not provide coverage for the Complaint.

B.     The Excess Policies issued by Mt. Hawley to Richardson Construction do not provide coverage for the Complaint.

C.     Mt. Hawley does not have a duty to defend Richardson Construction against the Complaint.

D.     Mt. Hawley does not have a duty to indemnify Richardson Construction against any settlement or judgment on the Complaint.

E.     Mt. Hawley is entitled to its attorneys' fees incurred in this action.

F.     Mt. Hawley is entitled to its costs incurred in this action.

///

///

1      G.      Mt. Hawley is entitled to such other and further relief as the Court deems

2  just and proper.

3          RESPECTFULLY SUBMITTED May 29, 2024.

4

5                                              THE CAVANAGH LAW FIRM, PA

6

7                                              By:   */s/ Rob A. Justman*
                                                      Rob A. Justman (*Pro Hac Vice Pending*)
8                                                     1850 North Central Avenue, Suite 1900
                                                      Phoenix, Arizona 85004
9

10                                             LITCHFIELD CAVO, LLP

11

12                                             By: _Marisa A. Pocci_____
                                                      Marisa Pocci Carney, Nevada Bar No. 10720
13                                                    3753 Howard Hughes Pkwy., Suite 200
                                                      Las Vegas, Nevada 89169
14

15                                             *Attorneys for the Plaintiff, Mt. Hawley Insurance Co.*

16

17

18

19

20

21

22

23

24

25

26

17